**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FEDERAL TRADE COMMISSION and STATE OF GEORGIA,

Plaintiffs,

v.

STEVEN D. PEYROUX, individually and as an owner and officer of REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, also d/b/a Stem Cell Institute of America, LLC, PHYSICIANS BUSINESS SOLUTIONS, LLC, and SUPERIOR HEALTHCARE, LLC,

BRENT J. DETELICH, individually and as an officer of REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, also d/b/a Stem Cell Institute of America, LLC,

REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, a limited liability company, also d/b/a Stem Cell Institute of America, LLC,

PHYSICIANS BUSINESS SOLUTIONS, LLC, a limited liability company, and

SUPERIOR HEALTHCARE, LLC, a limited liability company,

Defendants.

Case No. 1:21-cv-03329-AT

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**I. INTRODUCTION ......................................................................................1**

**II. DEFENDANTS MISAPPLY THE SUMMARY JUDGMENT STANDARD ......................................................................................2**

**III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL COMPLAINT COUNTS ......................................................................4**

A. Defendants Concede the Underlying Deceptive Scheme ............................4

B. Application of Georgia Law to the Undisputed Facts..................................6

1. The Georgia FBPA Is Construed Consistent with the FTC Act...................6

2. It Is Undisputed that Defendants Disseminated Claims Regarding Stem Cell Therapy Using a Computer (Count IV)...............................................9

3. The Corporate Defendants Operated as a Common Enterprise....................9

4. Defendant Peyroux Is Individually Liable Under the FBPA......................12

**IV. INJUNCTIVE AND MONETARY RELIEF ARE WARRANTED.........14**

A. The FBPA is Neither Unsettled nor Unconstitutionally Vague.................15

1. Defendants Had Fair Notice of Conduct that Violates the FBPA .............16

2. Defendants Had Fair Notice that a Court Could Award Civil Penalties as a Remedy to Punish Their Conduct ...........................................................18

3. Defendants Had Fair Notice that They Could Be Required to Refund Amounts Charged to Consumers for Stem Cell Therapy ...........................20

B. There Are No FBPA Questions to Certify to the Georgia Supreme Court.22

C. Civil Penalties for Violations Against Elderly and Disabled Consumers Should Be Imposed .......................................................................................24

**V. CONCLUSION..........................................................................................25**

# TABLE OF AUTHORITIES

**Cases**

*Agnew v. Great Atl. & Pac. Tea Co.*, 502 S.E.2d 735 (Ga. Ct. App. 1998)..............7

*Bartow Cty. Bank v. Bartow Bd. of Tax Assessors,* 312 S.E.2d 102 (1984)............15

*Bouton v. Ocean Props., Ltd.*, No. 16-cv-80502, 2017 WL 4792488 (S.D. Fla. Oct. 23, 2017) ..........12

*Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000) ..........20

*Brugman v. State*, 339 S.E.2d 244 (Ga. 1986)..........15

*Castanon v. UPS/IBT Full-Time Emp. Pension Plan*, No. 1:16-cv-0621-AT, 2018 WL 6362625 (N.D. Ga. Sept. 28, 2018)..........4

*Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-cv-80495, 2019 WL 13203852 (S.D. Fla. Sept. 30, 2019) ..........11

*Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224 (Ga. Ct. App. 2016) ..........21

*Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456 (11th Cir. 1998) ..........22

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993) ..........3

*FTC v. BlueHippo Funding, LLC,* 762 F.3d 238 (2nd Cir. 2014)..........17

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1992)..........17

*FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268 (N.D. Ga. 2022)..........3, 10

*FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228 (11th Cir. 2014)..........12

*FTC v. Life Mgmt. Servs. of Orange Cnty., LLC*, 350 F. Supp. 3d 1246 (M.D. Fla. 2018), *aff'd*, No. 19-14248, 2022 WL 703939 (11th Cir. Mar. 9, 2022)..........14

*FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066 (11th Cir. 2021)..........4, 9

*FTC v. Pointbreak Media*, *LLC*, 376 F. Supp. 3d 1257 (S.D. Fla. 2019)................10

*Georgia ex rel. Carr v. Elite Integrated Med.*, *LLC*, 533 F. Supp. 3d 1303 (N.D. Ga. 2021)....................................................................................................5, 8

*Harden v. State Farm Mut. Auto Ins. Co.*, 339 F. App'x 897 (11th Cir. 2009) ......22

*Henderson v. Gandy*, 623 S.E.2d 465 (Ga. 2005) ....................................................7

*Holtsclaw v. Holtsclaw,* 496 S.E.2d 262 (Ga. 1988) ..............................................19

*In re Arby's Rest. Grp. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)...........................................................................................7, 23

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000).........................................17

*New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 430 F. Supp. 3d 761 (D.N.M. 2019)..........................................................................................................11

*People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358 (S.D.N.Y. 2019).....................11

*Quattrocchi v. State,* 850 S.E.2d 432 (Ga. Ct. App. 2020), *cert. denied* 2021 Ga. LEXIS 313 (Ga. May 17, 2021) .......................................................................21

*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)...................................................4

*Rest. Grp. Mgmt., LLC v. Zurich Am. Ins. Co.*, 2022 WL 1931094 (11th Cir. 2022) ..........................................................................................................................23

*Rockdale Cty. v. U.S. Enters.*, 865 S.E.2d 135 (Ga. 2021)......................................15

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................4

*Small v. Savannah Int'l Motors, Inc.*, 619 S.E.2d 738 (Ga. Ct. App. 2005) ...........21

*State ex rel. Meredith Chevrolet, Inc.*, 244 S.E.2d 15 (Ga. Ct. App. 1978)............17

*Strange v. GMR Processing LLC*, No. 1:21-cv-04469-SDG, 2023 WL 2752188 (N.D. Ga. Apr. 3, 2023) ..........................................................................................20

*Theni Guru Krishna Textile Mills (P), LTD. v. World's Glob. Source, LLC*, No. 1:16-cv-1482-SCJ, 2018 WL 11336434 (N.D. Ga. Mar. 6, 2018), *aff'd sub nom.*

*Theni Guru Krishna Textile Mills, Ltd v. World's Glob. Source, LLC*, 844 F. App'x 279 (11th Cir. 2021) ....................13

*Toomey v. Wachovia Ins. Servs., Inc.*, 450 F.3d 1225 (11th Cir. 2006) ....................23

*Zeeman v. Black*, 273 S.E.2d 910 (Ga. Ct. App. 1980) ....................7

**Statutes**

Fla. Stat. § 501.204 ....................11

Fla. Stat. Ch. 501, Pt. II....................11

O.C.G.A. § 10-1-393.................... passim

O.C.G.A. § 10-1-393.5....................9

O.C.G.A. § 10–1–850 ....................25

O.C.G.A. § 1-3-3....................19

O.C.G.A.. § 10-1-391.................... 7, 11, 18, 23

O.C.G.A.. § 10-1-392....................19

O.C.G.A.. § 10-1-397.................... passim

O.C.G.A.. § 10-1-397.1....................16

O.C.G.A.. § 10-1-851.................... passim

**Rules**

Ga. Sup. Ct. Rule 46 ....................22

Local Rule 56.1 ....................3, 4

## I. INTRODUCTION

Defendants Steven Peyroux, Superior Healthcare ("SHC"), Regenerative Medicine Institute of America (d/b/a Stem Cell Institute of America) ("SCIA") and Physicians Business Solutions ("PBS"), (collectively "Defendants"[1]) concede the core elements of Plaintiffs' case. They raise neither arguments nor evidence disputing that SHC, SCIA, and PBS each disseminated advertisements to consumers claiming that stem cell therapy is effective to treat orthopedic conditions and as an alternative to surgery, steroids, or pain medication. Nor do they in any way challenge the conclusions of Plaintiffs' scientific expert that there is no competent and reliable scientific evidence to support those advertising claims. Defendants also do not dispute that Plaintiffs' evidence meets the legal standard under federal law to establish individual liability and that Corporate Defendants operated as a common enterprise.

Thus, the question posed by Defendants of "who did what to whom" has but one answer: All Defendants deceptively advertised stem cell therapy to consumers. The abundant legal misdirection in Defendants' memorandum never once puts that unassailable fact in dispute.

---

[1] Defendant Brent Detelich filed a separate opposition to Plaintiffs' Joint Motion for Summary Judgment (Docket No. 112). In this Reply, "Defendants" refers only to Peyroux and Corporate Defendants and does not include Defendant Detelich.

The record is similarly undisputed that (1) Defendants used a computer to disseminate their advertisements; (2) Defendants' advertisements, at a minimum, targeted or had a disparate impact on elderly and disabled consumers; (3) PBS published advertisements for "Compliance Programs approved by the FTC & FDA" which were not approved by either the Federal Trade Commission ("FTC") or the Food and Drug Administration ("FDA"); and (4) SCIA and PBS provided hundreds of clients across the country with the means to mislead consumers with unsubstantiated claims about stem cell therapy.

Having conceded or failed to challenge the key facts, Defendants argue only that the liability standards differ under Georgia law, a legal dispute appropriate for this Court to decide on summary judgment. The Court has already interpreted Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 through 10-1-408, consistently with the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq*., in a case involving the deceptive advertising of stem cell therapy, and it need not certify any issues of Georgia law to the Georgia Supreme Court.

## II. DEFENDANTS MISAPPLY THE SUMMARY JUDGMENT STANDARD

Because Plaintiffs have supported their motion with "credible evidence that would entitle [them] to a directed verdict if not controverted at trial . . . [they are]

entitled to summary judgment unless the non-moving party comes forward with *significant, probative evidence* demonstrating the existence of a genuine and material dispute of fact." *See FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1288 (N.D. Ga. 2022) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). Defendants do not cite a single shred of evidence in any of their responses to Plaintiffs' Statement of Material Facts ("SMF"). Instead, they attempt to create factual disputes with vague assertions that Plaintiffs' statements of fact are unsupported by the cited evidence,[2] and pepper their responses with self-serving statements untethered to the record. Where Defendants do rely on evidence, in their confusingly captioned "Statement of Disputed Material Facts,"[3] the evidence cited either fails to support the factual statement, or consists of nothing besides conclusory testimony contradicted by voluminous record evidence.[4] When, as here, "opposing parties tell two different stories, one of which

---

[2] As discussed in Plaintiffs' Reply to Defendants' Responses to Plaintiffs' Statement of Material Facts ("SMF Reply"), Defendants frequently claim a fact is unsupported by a citation, even when that citation directly quotes the evidence. *See, e.g.*, SMF Reply Nos. 351, 354, 389, 410, 423, 425, 617, 619, 675, 690, 695–98.

[3] Docket No. 111. As explained in Plaintiffs' Response to Docket No. 111, this Court's Local Rules do not permit for such a Statement, and Plaintiffs have thus treated Docket No. 111 as a Statement of Additional Material Facts under LR 56.1(B)(2)(b).

[4] *See* Pls.' Resp. to Defs. Peyroux and Corp. Defs.' Statement of Disputed Facts *passim*.

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).[5]

## III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL COMPLAINT COUNTS

### A. Defendants Concede the Underlying Deceptive Scheme

The heart of this case lies in Counts I and IV, which mirror each other and allege that Defendants deceptively advertised stem cell therapy in violation of Section 5 of the FTC Act and the FBPA, respectively. Defendants' response to Plaintiffs' summary judgment motion fails to refute any of Plaintiffs' statements of fact relevant to the three-pronged deception analyses under the FTC Act and the FBPA,[6] much less marshal facts to make any substantive legal arguments.

---

[5] Defendants proffer additional factual statements in their brief that are not set out in their "Statement of Disputed Material Facts." However, these facts are to be disregarded by the Court under LR 56.1(B)(2)(b) and 56.1(B)(1), since "judges are not like pigs, hunting for truffles buried in briefs." *Castanon v. UPS/IBT Full-Time Emp. Pension Plan*, No. 1:16-cv-0621-AT, 2018 WL 6362625, at *2 (N.D. Ga. Sept. 28, 2018) (Totenberg, J.) (cleaned up). Further, as Rule 56.1 "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge," *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotations omitted), any legal arguments contained only in Defendants' responses to Plaintiffs' SMF but not in their brief, and any purported factual disputes without citations to the record, should likewise be disregarded.
[6] *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1079 (11th Cir. 2021) ("FTC must show that '(1) there was a representation; (2) the representation was likely to

First, Defendants do not dispute that they disseminated advertisements containing the challenged representations through a wide array of media channels, including social media, print, TV, and radio.[7] Second, they cite no evidence to dispute that their advertisements expressly conveyed the challenged representations in Counts I and IV or to counter Plaintiffs' evidence that these representations were not supported by competent and reliable scientific evidence.[8] Indeed, Defendants take great pains to avoid discussing their ads and substantiation at all.

Nor does Defendants' opposition even mention Counts II and III, which allege that Defendants falsely advertised PBS's regenerative medicine compliance training programs as "FTC-Approved" and "FDA-Approved," and that Defendants provided others with the means and instrumentalities to commit deceptive

---

mislead customers acting reasonably under the circumstances; and (3) the representation was material'"); *Georgia ex rel. Carr v. Elite Integrated Med., LLC*, 533 F. Supp. 3d 1303, 1312 (N.D. Ga. 2021) (applying FTC Act standard in determining whether representation is deceptive under FBPA).

[7] *See* SMF Reply Nos. 326, 363, 388–89, 470, 475, 477, 480, 482–84, 486–495, 513–14, 516, 518, 520–23, 525–26, 601, 603–05.

[8] It speaks volumes that Defendants did not file a response to Plaintiffs' *Daubert* motion (Docket No. 100) seeking to exclude the testimony of Defendants' only expert witness, Dr. Jonathan Lakey. They also did not seek to exclude the testimony of Plaintiffs' stem cell biology and regenerative medicine expert, Dr. Sean Morrison, whose expert report Dr. Lakey agreed with and even praised. SMF Reply Nos. 693, 699–707.

practices. Although (without citing any evidence) Defendants raise vague suggestions in their responses to Plaintiffs' statements of fact,[9] they never once articulate any defense in their opposition memorandum to the underlying deceptive conduct. Thus, with the facts concerning the underlying deception unchallenged, all that remains are legal questions.

Defendants fail to mount a legal defense to any claimed violation of the FTC Act, or object to entry of the proposed injunction for those violations. They confine themselves to challenging the extension of certain legal doctrines in established FTC case law[10] to the state law claims.

**B. Application of Georgia Law to the Undisputed Facts**

**1. The Georgia FBPA Is Construed Consistent with the FTC Act**

The Georgia legislature explicitly instructed that the FBPA "be interpreted and construed consistently with interpretations given by the [FTC] in the federal

[9] *See, e.g.*, SMF Reply Nos. 627–30 (stating in response that "the citation does not support this Statement to the extent that it implies that PBS ever led any one to believe that there was prior FTC approval. An independent attorney was speaking and expressing his opinion.").

[10] As noted above, Peyroux makes no effort to dispute that he meets the standard of individual liability under the FTC Act. Although Defendants appear to dispute at least some of the "commingling of assets" element in the common enterprise test, they never actually argue that the facts when considered in their entirety do not meet the threshold for finding a common enterprise as adopted by the Eleventh Circuit. *See* Section III.B.3, *infra*.

courts pursuant to Section 5(a)(1) of the [FTC] Act" O.C.G.A.. § 10-1-391(b); *see also Agnew v. Great Atl. & Pac. Tea Co.*, 502 S.E.2d 735, 737 (Ga. Ct. App. 1998) ("the FBPA must be interpreted and construed consistently with the specified federal case law"); *Zeeman v. Black*, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980); *In re Arby's Rest. Grp. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441, at *18 (N.D. Ga. Mar. 5, 2018) (Totenberg, J.).[11] Further, in deciding that the FBPA applied to the entrepreneurial or business aspects of the provision of medical services, the Georgia Supreme Court has stated that "[o]ur ruling is further buttressed by our Legislature's stated intent that the FBPA 'be interpreted and construed consistently with interpretations given by the [FTC]'" and that "Federal courts have determined that the [FTC Act] applies to commercial aspects of the medical profession." *Henderson v. Gandy*, 623 S.E.2d 465, 468–469 (Ga. 2005) (citations omitted).

Moreover, this Court has already held in a case involving stem cell therapies

---

[11] Although the underlying cause of action was brought pursuant to FBPA Section 399, such that different standards for liability under the FBPA were considered, the Court's construction and interpretation of legislative intent and general application of the FBPA apply here to a cause of action brought under Section 397. *See In re Arby's,* 2018 WL 2128441, at *18 ("the stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers" and "The Federal Trade Commission Act, 15 U.S.C. 45, is expressly made the appropriate standard by which the purpose and intent of the Georgia Act is to be effectuated, implemented, and construed" (*quoting Zeeman*, 273 S.E.2d at 913)).

that, consistent with case law construing the FTC Act, to prove a violation of Section 393(a) of the FBPA, O.C.G.A. § 10-1-393(a), the State must establish (1) that a representation was made, (2) that the representation was likely to mislead consumers acting reasonably under the circumstances, and (3) that the representation was material. *Elite Integrated Med.,* 533 F. Supp. 3d at 1312. To demonstrate that the representation is likely to mislead consumers, the State is required to show only that Defendants lack a reasonable basis, or adequate substantiation, for asserting that the representation is true. *Id.* at 1313. As noted above, Defendants effectively concede that they made express marketing claims that stem cell therapies cure, treat, and/or mitigate orthopedic conditions without relying on competent and reliable scientific evidence as a basis for those claims.[12] Under the law applicable to both the FTC's and the State's claims, Defendants made deceptive claims and violations of the FTC Act and the FBPA have been established as a matter of law.

Thus, the FBPA is to be construed here and applied consistent with interpretations of the FTC Act in federal courts. The joint cause of action is based

[12] **SHC:** SMF Reply Nos. 359, 364–66, 368–69, 375, 380–81, 384–89, 392, 399, 402, 406; **SCIA:** SMF Reply Nos. 449–55, 459, 463–64, 470, 474–78, 482–94, 514, 516, 518, 521–26, 529–30, 532, 538, 540; **PBS:** SMF Reply Nos. 538, 540, 572–75, 585–97, 603–4, 608, 610–11; **No substantiation:** SMF Reply Nos. 680–81.

on the same set of facts[13] and involves the same legal standards for liability.

**2. It Is Undisputed that Defendants Disseminated Claims Regarding Stem Cell Therapy Using a Computer (Count V)**

Defendants effectively concede that they (1) made deceptive claims, and (2) used the internet to disseminate the claims.[14] As explained above, there is no dispute that Defendants' claims about stem cell therapy were deceptive under Georgia or federal law. The plain language of Section 393.5(b)(2) of the FBPA, O.C.G.A. § 10-1-393.5(b)(2), that it is unlawful for a person to engage in any act, practice, or course of business through the use of a computer that would operate as a "fraud *or deceit*" upon a person, makes clear that Defendants violated this section because they used a computer to disseminate deceptive representations (emphasis added). The standard for deceit in Section 393.5 is no different than the standard applicable to Section 393.

**3. Corporate Defendants Operated as a Common Enterprise**

Defendants make no serious effort to argue that they did not operate as a common enterprise under the test adopted by the Eleventh Circuit in *On Point*, 17 F.4th at 1082. Although Defendants attempt to dispute some of Plaintiffs' factual

[13] Defendants concede that "the federal and the State law claims arise from the same transactions and occurrences." Peyroux Opp'n Br., at 11.
[14] SMF Reply Nos. 362–69, 375–81, 387, 391–96, 467–78, 492–95, 515–26, 532–33, 601, 604.

statements, their efforts uniformly fall flat, as they either fail to cite any evidence whatsoever,[15] or rely on nothing more than "self-serving, conclusory testimony" in declarations that are "contradicted by heaps of evidence." *Fleetcor*, 620 F. Supp. 3d at 1311.[16] In addition, even if there were a dispute of material fact over some facts underpinning Plaintiffs' common enterprise theory, courts "are primarily tasked with evaluating the pattern and frame-work of the whole enterprise," and neither "any particular number of entity connections" nor "any specific connection" is necessary to show a common enterprise. *FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1269–70 (S.D. Fla. 2019) (cleaned up). And the "pattern and frame-work" that emerges from the undisputed facts here is crystal clear.

As elsewhere in their brief, Defendants' efforts are instead spent on misdirection and obfuscation. Defendants argue that Plaintiffs' "theory of liability cannot survive summary judgment" because Plaintiffs have not "pled the appropriate veil piercing theory of liability under *Georgia* law in their Complaint." Peyroux Opp'n Br., at 19. Defendants' argument is entirely without merit. Courts have applied the common enterprise theory of liability both in FTC enforcement

---

[15] *See, e.g.*, SMF Reply Nos. 11–18, 20–22, 24, 26–27, 29–38 40–42, 53–56, 60–63, 66–67, 69, 73, 75–80, 91–94, 102–103, 110–16, 118, 125, 128–29, 131–32.
[16] *See, e.g.*, Pls.' Resp. to Defs.' Statement of Disputed Facts, Nos. 7, 11, 16.

actions and in actions to enforce consumer protection statutes similar to the FBPA. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-cv-80495, 2019 WL 13203852, at *9–10 (S.D. Fla. Sept. 30, 2019), and cases cited therein (extending FTC Act common enterprise doctrine to violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. Ch. 501, Pt. II[17]); *see also New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 430 F. Supp. 3d 761, 865–67 (D.N.M. 2019); *People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358, 365 (S.D.N.Y. 2019). As discussed above in Section III.B.1, the Georgia legislature provided that the FBPA is to be "interpreted and construed consistently" with the FTC Act. O.C.G.A. § 10-1-391(b). Defendants offer no basis for their position that the legislature somehow sought to exclude the well-established common enterprise doctrine from that interpretation, other than to note that the legislature did not expressly mention the common enterprise doctrine when adopting the FBPA.[18] Given that the Georgia legislature did not mention any other

[17] The FDUPTA provides: (1) "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" and (2) "It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act . . . ." Fla. Stat. § 501.204.

[18] *See* Peyroux Opp'n Br., at 19 n.70. For reasons Plaintiffs cannot discern,

specific aspect of FTC doctrine in issuing its instructions on statutory interpretation, Defendants' position is wholly unpersuasive.

#### 4. Defendant Peyroux Is Individually Liable Under the FBPA

Plaintiffs have presented scores of statements of material fact showing that Peyroux's authority to control, direct participation in, and knowledge of the deceptive acts or practices render him individually liable under applicable case law. *See, e.g.*, SMF Reply 133–243. Defendants have either conceded that these facts are undisputed or failed to cite any record evidence to create a factual dispute. Indeed, Defendants themselves state in their brief that "Peyroux, as a small business owner, necessarily wears many hats and is involved in most aspects of his small business." Peyroux Opp'n Br., at 3. These facts suffice for individual liability under the FTC Act. *See FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014).

Having failed to point to any material factual dispute, Defendants instead once again attempt to muddle the applicable law, dismissively referring to "individual liability rules and short-cuts" as "a judicial construct of the federal courts via FTC caselaw," and asserting that a corporate veil piercing theory

Defendants also appear to believe their position is supported by *Bouton v. Ocean Props., Ltd.*, No. 16-cv-80502, 2017 WL 4792488 (S.D. Fla. Oct. 23, 2017), a case that does not involve any federal or state statute at issue in this matter.

centering on abuse of the corporate form applies to the State's allegations. Peyroux Opp'n Br., at 22–24. Defendants provide no basis for doubting that the Georgia legislature's mandate to construe and interpret the FBPA consistently with the FTC Act extends to standards for individual liability under the FPBA, and insist, without any argument or citation to binding or even persuasive authority,[19] that the legislature's instruction be ignored unless accompanied by "some clear indication from Georgia's highest court that it wishes to significantly expand the scope of individual liability for a *corporation's acts* in the GFBPA's context." Peyroux Opp'n Br., at 22. This is no more persuasive than their equally baseless demand, discussed in the preceding section, that the Georgia legislature specifically identify which aspects of FTC doctrine it intended to include in its instructions concerning how to construe and interpret the FBPA.[20] And, unsurprisingly, federal courts construing state consumer protection statutes similar to the FBPA have not

[19] Defendants' sole citation for the outlandish position discussed in this section is to *Theni Guru Krishna Textile Mills (P), LTD. v. World's Glob. Source, LLC*, No. 1:16-cv-1482-SCJ, 2018 WL 11336434 (N.D. Ga. Mar. 6, 2018), *aff'd sub nom. Theni Guru Krishna Textile Mills, Ltd v. World's Glob. Source, LLC*, 844 F. App'x 279 (11th Cir. 2021). Given that *Theni* involves neither the FTC Act nor the FBPA, it plainly has no bearing on the present matter.

[20] Defendants also offer no explanation as to why they maintain that extending the FTC Act's common enterprise doctrine to the FBPA context requires action from the legislature, while extending the FTC Act's individual liability doctrine, by contrast, requires guidance from Georgia's highest court.

hesitated to extend the FTC Act's standard for individual liability to analogous state act violations without guidance from any state court. *See, e.g.*, *FTC v. Life Mgmt. Servs. of Orange Cnty., LLC*, 350 F. Supp. 3d 1246, 1260 (M.D. Fla. 2018), *aff'd*, No. 19-14248, 2022 WL 703939 (11th Cir. Mar. 9, 2022) (holding that standards for individual liability under FTC Act and FDUPTA are identical).

## IV. INJUNCTIVE AND MONETARY RELIEF ARE WARRANTED

Defendants do not even mention, much less challenge, Plaintiffs' request for injunctive relief, and focus their efforts on arguing that the State is not entitled to monetary relief. Defendants do not engage with or meaningfully dispute any facts related to monetary relief, instead falling back on misplaced assertions that "significant, unsettled questions of Georgia law exist in this matter"[21] and that FBPA Sections 397(b)(2) and 851, O.C.G.A. §§ 10-1-397 and 10-1-851, are "unconstitutionally vague." Peyroux Opp'n Br., at 25–26. Defendants also contend that this Court should not construe and apply the FBPA Sections 397 and 851, but should instead certify the questions they have raised about these FBPA sections to the Georgia Supreme Court. Peyroux Opp'n Br., at 25. None of Defendants'

[21] Plaintiffs have not conceded that "this case involves significant, unsettled questions of Georgia law," but acknowledged in their summary judgment brief that the FBPA does not specify a method for calculating the number of violations or set out specific factors for determining the size of the per-violation penalty under Section 397. Pls.' Br., at 28, 30.

contentions are persuasive.

**A. The FBPA is Neither Unsettled nor Unconstitutionally Vague**

The Georgia Supreme Court has instructed that "[a]cts of the Legislature are not only presumed to be constitutional, but . . . the authority of the Courts to declare them void [should never] be resorted to, except in a clear and urgent case." *Brugman v. State*, 339 S.E.2d 244, 251 (Ga. 1986) (citing *Bartow Cty. Bank v. Bartow Bd. of Tax Assessors,* 312 S.E.2d 102 (1984)). The Georgia Supreme Court has further instructed that "to withstand an attack of vagueness or indefiniteness, a civil [law] must provide fair notice to those to whom the [law] is directed and its provisions must enable them to determine the legislative intent." *Rockdale Cty. v. U.S. Enters.*, 865 S.E.2d 135, 143 (Ga. 2021) (citation omitted). A challenged law violates due process only when it is "so vague that persons of common intelligence must necessarily guess at its meaning and differ to its application." *Id.* Moreover, outside the First Amendment context, "vagueness challenges . . . must be examined in light of the facts of the case"; if that "'as-applied' vagueness challenge fails, then [a] facial challenge also fails" as a matter of law. *Id.* at 144. Because this case does not involve First Amendment issues, Defendants must initially demonstrate why Section 397(b)(2)(B) is vague as applied to the facts of this case and then carry the ultimate burden of proving a due process violation. *Id.* at 144–45.

### 1. Defendants Had Fair Notice of Conduct that Violates the FBPA

Defendants argue generally that "violation" as used in Sections 397 and 851 is vague and indefinite because Section 393 does not plainly articulate what constitutes a violation of the FBPA. Peyroux Opp'n Br., at 28, 33. Section 393(a) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices" as "unlawful." Section 397 authorizes the Attorney General "whenever proceedings would be in the public interest" and "whether or not any person had actually been misled" to take action to enforce the FBPA. One enforcement option available to the Attorney General is to make a showing in court[22] "that a person has violated" the FBPA, after which the court may enter or grant different types of relief, including civil penalties. O.C.G.A. § 10-1-397(b)(2). The common sense meaning of "violation" in Section 397 is necessarily tied to a person's use of the methods, acts, or practices declared unlawful in other sections of the FBPA and is thus plainly articulated.

Not long after the FBPA was enacted, the Georgia Court of Appeals observed that in illustrating the application of FBPA standards in a government

[22] The Attorney General is authorized to "initiate or intervene as a matter of right or otherwise appear in any federal court . . . to implement the provisions" of the FBPA. O.C.G.A. § 10-1-397.1.

enforcement action, "we would find that promotional advertising through a public medium addressed to the consuming public to create demand for a product, if done in a deceptive manner, would be a violation of the FBPA." *State ex rel. Meredith Chevrolet, Inc.*, 244 S.E.2d 15, 18 (Ga. Ct. App. 1978). Additionally, under the FTC Act, it has been the law for decades that the violation occurs when the representation is made and that a presumption of reliance arises once the FTC shows that a defendant made material misrepresentations, that were widely disseminated, and that consumers made purchases. *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–606 (9th Cir. 1992); *see also McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000) ("Proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief needed to redress fraud.") (citing *Figgie Int'l*); *FTC v. BlueHippo Funding, LLC,* 762 F.3d 238, 243 (2nd Cir. 2014) ("The injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions.") (citing *Figgie Int'l*).

Defendants have not explained why they did not have fair notice that making deceptive claims in the consumer marketplace could be deemed unlawful under the FBPA and that the standard for deception would be consistent with FTC law. Defendants have also not demonstrated why they could not have been on notice

that the conduct they engaged in—the dissemination of unsubstantiated claims about the efficacy of stem cell therapy through public media such as the internet—could not potentially subject them to liability for violating the FBPA. The plain language of Section 393, express legislative intent stated in Section 391, and prior judicial construction of Section 393(a) all demonstrate that a person of ordinary intelligence would not have to guess whether disseminating unsubstantiated claims about stem cell therapy through public media such as the internet could be deemed unlawful and therefore violate the FBPA. Defendants' "as-applied" and facial vagueness challenges fail.

#### 2. Defendants Had Fair Notice that a Court Could Award Civil Penalties as a Remedy to Punish Their Conduct

Defendants contend that, because "the minimum penalty [under Section 397] is not prescribed at all," the determination of the amount of civil penalties the court may grant is vague and indefinite. Peyroux Opp'n Br., at 27. The Georgia legislature directed that a court may enter or grant, upon a showing that a person[23] has violated the FBPA, a civil penalty *of up to* a maximum of $5,000 "per

[23] O.C.G.A. § 10-1-392(24) defines "person" as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity."

violation."[24] (emphasis added). Thus, contrary to what Defendants suggest, Section 397(b)(2)(B) is not vague, but instead crystal clear. This Court has the authority to determine whether conduct violates the FBPA and then has the power to impose a "per violation" civil penalty in a range that that has a ceiling of $5,000.

Defendants have not explained why they did not have fair notice that engaging in deceptive acts or practices in the consumer marketplace could be deemed unlawful under the FBPA and potentially subject them to civil penalties ranging up to $5,000 per violation. Defendants have also not demonstrated why they could not have been on notice that, if the conduct they engaged in was found by a court to violate the FBPA, the Court could potentially punish them through the imposition of a civil penalty for each time they made a deceptive claim up to a maximum of $5,000.

Additionally, Defendants contend that because the phrase "intentional violation" is defined in O.C.G.A. § 10-1-392, the general definitions section of the FBPA, but the phrase "each violation" is not defined in Section 851, they "must

[24] The term "may" as used in Section 397 ordinarily denotes permission and not command. However, "where the word as used concerns the public interest or affects the rights of third persons, it shall be construed to mean "'must' or 'shall.'" O.C.G.A. § 1-3-3(10). *See also Holtsclaw v. Holtsclaw,* 496 S.E.2d 262, 264 (Ga. 1988) (holding that "may" means "shall" where the thing to be done "is for the sake of justice or for the public benefit").

guess." Peyroux Opp'n Br., at 32–33. But as explained above in Section IV.A.1, Defendants had fair notice of conduct that violates Section 393(a), the basis for imposing additional penalties under Section 851. There is nothing to guess about here because the legislature chose not to include the defined phrase "intentional conduct" in Section 851.[25]

Defendants' "as-applied" vagueness challenges to Sections 397(b)(2)(B) and 851 fail and, therefore, so do the facial challenges as a matter of law.

#### 3. Defendants Had Fair Notice that They Could Be Required to Refund Amounts Charged to Consumers for Stem Cell Therapy

Defendants also argue that Section 397(b)(2)(D) is vague and indefinite because they are unable to determine what constitutes being "adversely affected." Peyroux Opp'n Br., at 29–30. The current dual enforcement structure of the FBPA has been the law since 1988.[26] A private litigant may be entitled to "damages" as

[25] There is no intent requirement under Section 851: "individuals who violate the FBPA are subject to additional civil penalties if the violation is committed against elder or disabled persons." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) (citing § 10-1-851); *see also Strange v. GMR Processing LLC*, No. 1:21-cv-04469-SDG, 2023 WL 2752188, at *2 (N.D. Ga. Apr. 3, 2023) (imposing a penalty when the defendant did not know the plaintiff was disabled).

[26] The FBPA was amended in 1988 to add Section 397 authorizing the Administrator of the FBPA to seek equitable remedies "whenever proceedings would be in the public interest," and "whether or not any person had actually been

remedy for injury suffered as the result of conduct violating the FBPA. Conversely, a court may award the remedy of "restitution" in an enforcement action by the Attorney General upon a showing that a person violated the FBPA. The Attorney General does not have to make a showing that any person has actually been misled. O.C.G.A. § 10-1-397(b). The Georgia Court of Appeals in *Quattrocchi v. State,* 850 S.E.2d 432, 436 (Ga. Ct. App. 2020), *cert. denied* 2021 Ga. LEXIS 313 (Ga. May 17, 2021), held that "restitution" is not the same thing as damages and is instead akin to a refund of the purchase price.[27]

Defendants once again have not explained why they did not have fair notice that their conduct could subject them to an award by a court of a monetary remedy, not tied to causation and injury, but instead tied to the amount they charged consumers for stem cell therapy. The "persons adversely affected" merely defines

---

misled[.]" Ga. L. 1988, at 1659, 1660–61, § 1. Upon a showing by the Administrator in a superior court that a person had violated the FBPA, the superior court was granted the additional authority to enter or grant relief that included civil penalties, restitution, and other relief as the court deems just and equitable. *Id.* (codified as O.C.G.A. § 10-1-397(b)(2)(B), (D), (F)).

[27] The court notes in footnote 2, "'[d]amages' available to a private individual for actual injury suffered 'means relief other than the refund of the purchase price and restitution.'" (citing *Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. Ct. App. 2016) (quoting *Small v. Savannah Int'l Motors, Inc.*, 619 S.E.2d 738, 743 (Ga. Ct. App. 2005)). The private litigants in *Edel* and *Small* were not able to sustain their FBPA actions because neither was able to demonstrate actual damages, beyond the purchase price and restitution.

the group of consumers who would be entitled to "restitution." Defendants' third vagueness challenge fails as a matter of law.

### B. There Are No FBPA Questions to Certify to the Georgia Supreme Court

Contrary to Defendants' arguments, Georgia law is not "unsettled." Peyroux Opp'n Br., at 2, 11, 25, 32. Defendants argue generally that the issues they have raised about Sections 393(a), 397(b)(2), and 851 create questions about construction of the FBPA that should be certified to the Georgia Supreme Court before this Court considers the State's request for remedies. Peyroux Opp'n Br., at 11–12, 25, 32.

This Court "*may* certify questions or propositions of the laws of Georgia" to the Georgia Supreme Court when there is law involved in a case which is "determinative of the [case] and there are no controlling precedents in the [Georgia] appellate court decisions." Ga. Sup. Ct. Rule 46; *see also Harden v. State Farm Mut. Auto Ins. Co.*, 339 F. App'x 897, 901 (11th Cir. 2009) ("the decision to certify a question is discretionary."). But "[c]ertification should never be automatic or unthinking." *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998) (citation omitted). This Court may decide a question of state law "even when there is doubt as to how a state court would resolve the issue" and Defendants "have no right to insist upon certification." *Id.*

This Court may certify questions to the Georgia Supreme Court if there is "more than substantial doubt as to how the issue before [the Court] would be resolved under Georgia law." *Rest. Grp. Mgmt., LLC v. Zurich Am. Ins. Co.*, 2022 WL 1931094, at *2, n.3 (11th Cir. 2022) (citing *Toomey v. Wachovia Ins. Servs., Inc.*, 450 F.3d 1225, 1231 (11th Cir. 2006)).

The Georgia legislature created a roadmap for any superior court or federal court to interpret and construe the FBPA when it stated its intention that the FBPA is to be construed consistent with the FTC Act. O.C.G.A. § 10-1-391(b). There is no conflict in the Georgia case law construing the FBPA in the context of a government enforcement action that creates doubt about how to construe and apply the FBPA here. Given the plain language of the FBPA sections at issue, related Georgia appellate decisions, and the express intent of the Georgia legislature to liberally construe and apply the FBPA to promote its underlying purposes and policies,[28] there is no doubt, let alone "substantial doubt" about how to determine whether Defendants' conduct violates the FBPA, to quantify the number of violations in order to determine maximum potential civil penalties, and to determine the amount Defendants should pay as restitution. There are no FBPA

[28] *In re Arby's*, 2018 WL 2128441, *18 ("the Georgia legislature intended the [FBPA] to 'be liberally construed and applied to promote its underlying purposes and policies.'").

questions for certification and this Court can decide what remedies are appropriate without the aid of the Georgia Supreme Court.

### C. Civil Penalties for Violations Against Elderly and Disabled Consumers Should Be Imposed

Defendants argue that "a reasonable alternate inference from the evidence is that SHC's marketing content and strategy were geared toward those living with pain and discomfort: '[w]e've been able to help people of all ages and all walks of life recover from all sorts of injuries, arthritis, and chronic joint pain.'" Peyroux Opp'n Br., at 33. This inference is not reasonable in light of the undisputed record evidence that SHC's "target demographic for stem cells [wa]s more in the older age range," and that it would use social media to "'target' the advertisement towards the age demographic."[29] Nevertheless, even if Defendants' proposed alternative inference were reasonable, as explained above, Defendants do not dispute that their marketing strategy impacted elderly consumers.[30] Further,

---

[29] SMF No. 423; Ex. 067 at 24; *see also* Ex. 557 at 11 ("I'm looking forward to meeting you in a few days to share many of the great stories of patients (many whom are well into their 70's & 80's) who have received this treatment and been able to return to the 'playing field' of travel, quality family time, and even just simple daily routines like cooking & cleaning."); Ex. 366 (instructing that SHC stem cell lectures should not be scheduled on election day because that day "is very big and that is all old people have left in life to do."); SMF No. 428 (citing marketing emails with purported testimonials of elderly consumers).

[30] Defs.' SMF Resp. No. 357 (Defendants . . . also state that these services are

Defendants' alternative inference concedes that Defendants targeted disabled consumers.[31] Therefore, civil penalties are appropriate.

## V. CONCLUSION

Plaintiffs request that the Court grant summary judgment in their favor and enter the proposed order (Docket No. 73-3).

Dated: May 25, 2023

Respectfully submitted,

/s/ Elizabeth Nach
ELIZABETH NACH (Va. Bar No. 75235)
STACY N. CAMMARANO (D.C. Bar No. 1510736)
ROBERT VAN SOMEREN GREVE (D.C. Bar No. 1617234)
CASSANDRA RASMUSSEN (D.C. Bar 1617603)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

---

generally need [sic] in older individuals who suffered from arthritic type or regenerative systems."); *see also, e.g.*, SMF Reply Nos. 357–58.

[31] The FBPA defines "disabled person" as "a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities." § 10–1–850. SMF Reply No. 402; Ex. 590, Reid Dep. 23:11–15 ("[W]e can help get you out of your wheelchair. We can help you get rid of your walker."); SMF Reply No. 530; Ex. 604 at 40 (describing a degenerative disk disease that prevented a stem cell patient from engaging in major life activities); SMF Reply No. 540; Ex. 398 at E.9-37–38 ("When I came in here, I was in a lot of pain, not sleeping at night. I couldn't turn my head without hearing the bones grinding. . . So, I came and I got the treatment."); Ex. 080 at 52 ("Before I tried the amniotic tissue injection, I was having trouble just walking even five minutes.").

Tel.: (202) 326-2611 (Nach)
(202) 326-3308 (Cammarano)
(202) 326-2523 (Van Someren Greve)
(202) 684-0175 (Rasmussen)
Email: enach@ftc.gov
scammarano@ftc.gov
rvansomerengreve@ftc.gov
crasmussen@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Jacquelyn L. Kneidel
JACQUELYN L. KNEIDEL
Ga. Bar No. 644727
Office of the Attorney General Chris Carr
Georgia Department of Law
2 Martin Luther King, Jr. Drive, SE, Suite 356
Atlanta, GA 30334
Tel: (404) 458-3871
Email: jkneidel@law.ga.gov

*Attorney for Plaintiff State of Georgia*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2023, I caused service of *Plaintiffs' Reply in Support of Their Joint Motion for Summary Judgment* to be made by electronic filing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Date: May 25, 2023

/s/ Elizabeth Nach
Elizabeth Nach

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rule 7.1(D), that this document complies with Local Rule 5.1(C), as it was prepared using a 14-point Times New Roman font.

Date: May 25, 2023

/s/ Elizabeth Nach
Elizabeth Nach