**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF GEORGIA,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN D. PEYROUX, individually and as an owner and officer of REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, also d/b/a Stem Cell Institute of America, LLC, PHYSICIANS BUSINESS SOLUTIONS, LLC, and SUPERIOR HEALTHCARE, LLC,<br><br>BRENT J. DETELICH, individually and as an officer of REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, also d/b/a Stem Cell Institute of America, LLC,<br><br>REGENERATIVE MEDICINE INSTITUTE OF AMERICA, LLC, a limited liability company, also d/b/a Stem Cell Institute of America, LLC,<br><br>PHYSICIANS BUSINESS SOLUTIONS, LLC, a limited liability company, and<br><br>SUPERIOR HEALTHCARE, LLC, a limited liability company,<br><br>Defendants. | Case No. 1:21-cv-03329-AT<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS


**I. INTRODUCTION ........................................................................................1**

**II. DETELICH'S DEFICIENT SMF RESPONSES ........................................2**

**III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL COMPLAINT COUNTS ........................................................................3**

A. Ad Interpretation and Materiality ..........................................................3

B. Detelich Is Individually Liable for the Unlawful Conduct of All Corporate Defendants ..........................................................................................5

1. Neither Good Faith nor Reliance on Counsel Is a Defense to Detelich's Individual Liability for SCIA's Deceptive Practices ..................................6

2. Detelich Is Individually Liable for the Deceptive Practices of All Corporate Defendants—Including PBS and SHC .......................................................9

**IV. INJUNCTIVE RELIEF IS WARRANTED ..............................................11**

A. There Is a Cognizable Danger of Recurrent Violations ............................12

B. Injunctive Relief is Warranted Regardless of Whether Detelich Voluntarily Ceased Unlawful Activity .......................................................................14

**V. MONETARY RELIEF UNDER THE FBPA IS WARRANTED .............16**

A. Materiality Is Presumed and Defendants Violated Section 393(a) Each Time They Disseminated Claims About Stem Cell Therapy .....................16

B. The Legislature Directed that the Attorney General Should Enforce the FBPA in a Court with Equitable Powers ................................................16

C. "Targeting" and Proof of Consumer Reliance are not Required to Impose Penalties Under Section 851 ..................................................................18

D. The State is Entitled to Restitution.........................................................20

E. This Court Should Continue to Exercise Supplemental Jurisdiction Over the State's Claims....................21

F. This Court Need Not, and Should Not, Certify Any Questions to the Georgia Supreme Court....................23

**VI. CONCLUSION....................25**

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ........................................ 14

*Ameritox, Ltd. v. Millennium Laboratories, Inc.,* 805 F.3d 518 (11th Cir. 2015)...22

*Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000) ........................................ 18

*Chrysler Corp. v. FTC*, 561 F.2d 357 (D.C. Cir. 1977) ........................................ 7

*Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456 (11th Cir. 1998) ........................................ 24

*Feil v. FTC*, 285 F.2d 879 (9th Cir. 1960) ........................................ 7

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993) ........................................ 2

*FTC v. BlueHippo Funding*, 762 F.3d 238 (2nd Cir. 2014) ........................................ 20

*FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119 (D. Conn. 2008) ........................................ 4

*FTC v. Citigroup Inc.*, 239 F. Supp. 2d 1302 (N.D. Ga. 2001) ........................................ 14

*FTC v. Com. Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012), *aff'd in part*, 815 F.3d 593 (9th Cir. 2016) ........................................ 7, 8

*FTC v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 3771322 (M.D. Fla. July 18, 2013) ........................................ 7

*FTC v. F&G Int'l Grp. Holdings*, No. CV 620-073, 2022 WL 3582493 (S.D. Ga. Aug. 19, 2022) ........................................ 5

*FTC v. Figgie Int'l.*, 994 F.2d 595 (9th Cir. 1992) ........................................ 20

*FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268 (N.D. Ga. 2022)...... 2, 4, 12, 15

*FTC v. IAB Mktg. Assocs.*, 746 F.3d 1228 (11th Cir. 2014) ........................................ 6

*FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ... 4, 5, 11, 14

*FTC v. NPB Advert., Inc.*, 218 F. Supp. 3d 1352 (M.D. Fla. 2016) ......................7, 9

*FTC v. On Point Cap. Partners, LLC*, 17 F.4th 1066 (11th Cir. 2021) ......... 4, 5, 10

*FTC v. On Point Glob.*, No. 19-cv-25046-Civ-Scola, 2021 WL 4892228 (S.D. Fla. Sept. 29, 2021) ........................................................................................5

*FTC v. Partners In Health Care Ass'n*, 189 F. Supp. 3d 1356 (S.D. Fla. 2016).......5

*FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257 (S.D. Fla. 2019)..................9

*FTC v. QT, Inc.*, 512 F.3d 858 (7th Cir. 2008) .......................................................8

*FTC v. RCA Credit Servs.*, 727 F. Supp. 2d 1320 (M.D. Fla. 2010) .................. 5, 15

*FTC v. Roca Labs*, 345 F. Supp. 3d 1375 (M.D. Fla. 2018) ................................5, 9

*FTC v. Romero*, No. 5:21-cv-343-BJD-PRL, 2023 WL 2445339 (M.D. Fla. Feb. 27, 2023) ..........................................................................................................5

*FTC v. USA Fin.*, 415 F. App'x 970 (11th Cir. 2011) ....................................... 7, 15

*FTC v. Windward Mktg.*, No. 1:96–cv–615F, 1997 WL 33642380 (N.D. Ga., Sept. 30, 1997) ........................................................................................................15

*FTC v. World Travel Vacation Brokers*, 861 F.2d 1020 (7th Cir. 1988) ..................7

*Grimes v. Catoosa Cty. Sheriff's Off.*, 705 S.E.2d 670 (2010)...............................17

*Harden v. State Farm Mut. Auto Ins.*, 339 F. App'x 897 (11th Cir. 2009) ............24

*In re Arby's Rest. Group Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018).....................................................................................25

*Kraft Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992)......................................................5

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414 (11th Cir. 1984) ....23

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009).......................................3

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000).........................................20

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ....................... 7, 8

*Parker v. Scrap Metal Processors*, 468 F.3d 733 (11th Cir. 2006)............ 21, 22, 23

*Quattrocchi v. State*, 850 S.E.2d 432 (Ga. Ct. App. 2020)..................................... 20

*Regina Corp. v. FTC*, 322 F.2d 765 (3d Cir. 1963).................................................. 7

*Rest. Grp. Mgmt. v. Zurich Am. Ins.*, No. 21-12107, 2022 WL 1931094 (11th Cir. 2022) ......................................................................................................... 24

*Strange v. GMR Processing LLC*, No. 1:21-cv-04469-SDG, 2023 WL 2752188 (N.D. Ga. Apr. 3, 2023) .................................................................................. 18

*Sutherland v. Glob. Equip. Co.,* 789 F. App'x 156 (11th Cir. 2019) ...................... 22

*Toomey v. Wachovia Ins. Servs.*, 450 F.3d 1225 (11th Cir. 2006) .......................... 24

**Statutes**

1988 Ga. Laws ......................................................................................................... 17

2015 Ga. Laws ......................................................................................................... 17

28 U.S.C. § 1367 ............................................................................. 21, 22, 23

29 U.S.C. § 1367 ...................................................................................................... 21

O.C.G.A. § 10-1-393.5 ............................................................................................. 18

O.C.G.A. § 10-1-397 ........................................................................................ 20, 24

O.C.G.A. § 10-1-397.1 ............................................................................................. 17

O.C.G.A. § 10-1-850 ................................................................................................ 19

O.C.G.A. § 10-1-851 ................................................................................................ 18

O.C.G.A. § 23-1-1 .................................................................................................... 17

O.G.C.A. § 10-1-397 ................................................................................................ 16

**Rules**

Ga. Sup. Ct. Rule 46 ..........................................................................................24

## I. INTRODUCTION

This is a false advertising case. Remarkably, Defendant Brent Detelich ("Detelich"), just like his codefendants, cannot bring himself even to discuss the actual ads that Plaintiffs challenge as deceptive. He declines to mention the text of the express health claims in those ads; nor does he address the issue of substantiation for the claims. Having no evidence with which to raise a factual dispute, Detelich resorts to legal arguments that challenge well-settled principles of consumer protection law: That ads that are clear on their face mean what they say and that such claims and health-related claims are presumed material. Not surprisingly, he cites no law supporting that radical approach.

Turning to relief, Detelich argues that because he claims to have stopped advertising stem cell therapy, injunctive relief is not proper. This argument ignores both the case law holding that voluntary cessation does not render injunctive relief improper and the extensive evidence showing Detelich's ongoing health-related business activities. Finally, Detelich's legal challenges to Georgia's ability to obtain monetary relief ignore the Attorney General's parallel enforcement authority under the FBPA and do not require certification to the Georgia Supreme Court.

## II. DETELICH'S DEFICIENT SMF RESPONSES

The vast majority of Plaintiffs' Statements of Material Fact ("SMF") stand undisputed.[1] In the occasional responses where Detelich attempts to dispute a fact, he fails to marshal evidence demonstrating a genuine and material dispute.[2] Detelich cites to the record in a mere 30 responses, nearly all of which contain evidence that does not actually contradict the statement, but either supports it or aims to support some other immaterial fact.[3] Where Detelich cites evidence to dispute Plaintiffs' evidence, it is in the form of self-serving conclusory testimony contradicted by voluminous record evidence and is insufficient to create a genuine dispute of material fact.[4] Where Detelich relies on evidence in his "Statement of Material Facts" (Docket No. 112-2), it, likewise, either supports statements immaterial to Plaintiffs' claims, or contains only self-serving conclusory testimony contradicted by voluminous record evidence.[5]

---

[1] *See generally* Def. Detelich's Resp. to Pls.' Statement of Material Facts (responding that he did not dispute a statement or that an expert rendered the opinion referenced in the statement in 535 of Plaintiffs' 729 Statements).
[2] *See FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1288 (N.D. Ga. 2022) (requiring the nonmoving party to respond to credible evidence "with *significant, probative evidence* demonstrating the existence of a genuine and material dispute of fact") (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).
[3] *E.g.*, SMF Reply Nos. 57, 108, 228, 273, 336, 356, 523, 628.
[4] SMF Reply Nos. 310, 316–23, 726; *see also Fleetcor*, 620 F. Supp. 3d at 1311.
[5] *See generally* Pls.' Resp. to Def. Detelich's Statement of Material Facts.

Rather than rely on evidence, Detelich, like the Peyroux Defendants, attempts to create factual disputes with vague assertions that Plaintiffs' statements of fact are unsupported by the cited evidence, and peppers his responses with self-serving statements untethered to the record. These responses should be disregarded as they do not directly refute the facts with concise responses supported by specific citations to evidence (including page or paragraph number).[6] Detelich occasionally raises the specter of legal arguments in his responses to Plaintiffs' SMF without elucidating them in the brief. As a matter of law, these arguments too must fail.[7]

## III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL COMPLAINT COUNTS

### A. Ad Interpretation and Materiality

Detelich appears to be arguing that Plaintiffs need to present the court with extrinsic evidence, including consumer complaints, for the court to make findings

---

[6] LR 56.1(b)(2)(a)(2). Detelich fails to fulfill any prong of the rule: He does not challenge the admissibility of evidence, and for the reasons explained in Plaintiffs' Reply to Defendant Detelich's Responses to Plaintiffs' Statement of Material Facts ("SMF Reply"), his vague assertions that the citations do not support the evidence are untrue. *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("[F]ailure to comply with local rule 56.1 is not a mere technicality.").

[7] *See infra* Sections III.B.1 (reliance on advice of counsel is not a shield to liability); III.B.1 (anecdotal testimonials are insufficient substantiation and do not create a good faith defense to liability); III.B.2 (lack of employee relationship does not defeat individual liability where defendant was officer of one common enterprise defendant and directly involved in deceptive practices of all corporate defendants).

on ad meaning and materiality. The law is precisely the opposite.[8]

Detelich cites no case requiring extrinsic evidence when ads are express or clear on their face. Nor does he proffer any potential non-deceptive takeaway from the ads disseminated in this case.[9] All he does is cite a discussion in *FTC v. On Point Capital Partners LLC*, where the court notes it found consumer complaint

---

[8] *See FleetCor*, 620 F. Supp. 3d at 1289 ("If an advertisement either (1) expressly states or (2) clearly and conspicuously implies a claim, 'the court need not look to extrinsic evidence to ascertain whether the advertisement made the claim.'"); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1189 n.12 (N.D. Ga. 2008) (concluding that requiring the FTC to present consumer perception evidence was "unduly burdensome and unnecessary, particularly when the claims [were] apparent from the face of the advertisement" and that such extrinsic evidence "is only necessary when the asserted claims fall on the 'barely discernable' side of the [implied claims] continuum"); *see also FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 127–28 (D. Conn. 2008) (finding extrinsic evidence of ad interpretation unnecessary where an ad did "not employ innuendo, subliminal messages or hints to convey its message" and where other ads that did not repeat the language of the complaint were "so clear, repetitive, and unambiguous that they constitute the functional equivalent of express claims").

[9] Defendants' ads are clear on their face. *E.g.*, Ex. 131 at 0:30 ("[I]t takes only one treatment to reduce or eliminate your knee pain without prescription medications and without surgery."); Ex. 58 ("Do you suffer from [listing conditions] STOP the PAIN! Get relief without costly and painful surgery!"); Ex. 593 ("Did you know there is a pain free medical breakthrough that can eliminate the need for steroids, pain medications and surgery for virtually any joint in the body?"); Ex. 616 "Until recently, treatment options for people with chronic pain were limited to steroid injections (short term relief) and surgery (high risk and long recovery periods). Now, safe and effective treatments for knee, shoulder, hip, elbow, back and neck pain are available without harmful side effects and minimal pain."). *See also, e.g.,* SMF Nos. 366, 368–69, 375, 376, 380–81, 384–89, 392, 399, 470–71, 474–75, 477–78, 482, 484–85, 487–88, 490–91, 493–94, 513–518, 520–521, 523–26, 572–575, 585–93, 596, 604–05, 610–11, 625, 627–28.

evidence probative,[10] and then he tries to equate probative with "necessary." Not only does that ignore the controlling law cited above, but it also ignores the district court holding in *On Point* (granting summary judgment to the FTC) that expressly stated that while such consumer evidence was probative, it was not necessary.[11]

As to materiality, the law also could not be clearer that express claims like the ones in this case are presumed material.[12] The ads contained health-related claims, and as such are also presumed material.[13] Because ad meaning is clear on its face and materiality is presumed, summary judgment is appropriate.[14]

### B. Detelich Is Individually Liable for the Unlawful Conduct of All Corporate Defendants

Individuals can be held liable for FTC Act violations and, by extension, FBPA violations, of corporate defendants, if they "participated directly in the deceptive

---

[10] *FTC v. On Point Cap. Partners, LLC*, 17 F.4th 1066, 1079 (11th Cir. 2021).
[11] *FTC v. On Point Glob.*, No. 19-cv-25046-Civ-Scola, 2021 WL 4892228, at *9 (S.D. Fla. Sept. 29, 2021).
[12] *Nat'l Urological Grp.*, 645 F. Supp. 2d at 1190; *FTC v. F&G Int'l Grp. Holdings*, No. CV 620-073, 2022 WL 3582493, at *5 (S.D. Ga. Aug. 19, 2022); *FTC v. Partners In Health Care Ass'n*, 189 F. Supp. 3d 1356, 1364 (S.D. Fla. 2016)); *FTC v. RCA Credit Servs.*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010).
[13] *Nat'l Urological Grp.*, 645 F. Supp. 2d at 1190; *FTC v. Romero*, No. 5:21-cv-343-BJD-PRL, 2023 WL 2445339, at *8 (M.D. Fla. Feb. 27, 2023); *FTC v. Roca Labs*, 345 F. Supp. 3d 1375, 1386 (M.D. Fla. 2018) (*citing Kraft Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992))
[14] Detelich does not challenge Counts II ("FTC-approved" and "FDA-approved" claims) or Count III (means and instrumentalities).

practices or acts or had authority to control them" and "had some knowledge of the deceptive practices."[15] Detelich does not dispute his authority to control, direct participation in, and knowledge of Defendant SCIA's deceptive practices.[16] He suggests—without ever fully arguing—that he relied in good faith on testimony and advice from patients, medical professionals, and legal counsel.[17] Detelich also suggests—likewise without explicitly arguing—that he had little to do with Defendants PBS and SHC, thus inviting the Court to infer that he cannot be held individually liable for those companies' challenged practices either.[18] Neither of Detelich's half-hearted attempts to escape or limit liability is persuasive.

#### 1. Neither Good Faith nor Reliance on Counsel Is a Defense to Detelich's Individual Liability for SCIA's Deceptive Practices

Detelich submits that he "believed the information shared with SCIA clients regarding possible results from stem cell treatment to be true and credible," and "relied on . . . patient testimonials and the statements of medical professionals . . . when providing information about the use of stem cell treatment."[19] Detelich further states that "SCIA had legal counsel perform a compliance review of the

[15] *FTC v. IAB Mktg. Assocs.*, 746 F.3d 1228, 1233 (11th Cir. 2014) (cleaned up).
[16] *See* Detelich Responses to Pls.' SMF Nos. 249–60, 262, 264, 266–68, 271–79, 281–303.
[17] *See* Detelich Opp'n Br. 4–5.
[18] *See id.* 6–7.
[19] Detelich Opp'n Br. 4–5.

materials" that it made available to its clients.[20] Detelich fails to explain the legal significance of these statements, because there is none: Neither good faith nor reliance on advice of counsel is a cognizable defense to FTC Act violations, and by extension, to FBPA violations.[21]

It is well-established that good faith is not a shield to liability for deceptive advertising.[22] Indeed, "a practice may be deceptive without a showing of intent to deceive."[23] Courts have consistently rejected the contention that a lack of bad faith, such as that alluded to by Detelich, can shield an individual defendant from liability for a corporation's deceptive practices.[24] Reliance on the advice of counsel

---

[20] *Id.* at 4.

[21] As discussed in Section V of this brief, the Georgia legislature has provided that the FBPA is to be "construed and interpreted" consistent with the FTC Act.

[22] *See FTC v. USA Fin.*, 415 F. App'x 970, 974 n.2 (11th Cir. 2011) ("a defendant cannot avoid liability under section 5 of the [FTC Act] by showing that he acted in good faith because the statute does not require an intent to deceive"); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); ("[A]n advertiser's good faith does not immunize it from responsibility for its mis-representations.") (quoting *Chrysler Corp. v. FTC*, 561 F.2d 357, 363 n.5 (D.C. Cir. 1977); *Feil v. FTC*, 285 F.2d 879, 896 (9th Cir. 1960) ("Whether good or bad faith exists is not material, if . . . there is likelihood to deceive.").

[23] *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1368 (11th Cir. 1988); *accord World Travel Vacation Brokers*, 861 F.2d at 1029; *Regina Corp. v. FTC*, 322 F.2d 765, 768 (3d Cir. 1963).

[24] *See, e.g.*, *FTC v. NPB Advert., Inc.*, 218 F. Supp. 3d 1352, 1363 (M.D. Fla. 2016); *FTC v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 3771322, at *20 (M.D. Fla. July 18, 2013); *FTC v. Com. Planet, Inc.*, 878 F. Supp. 2d 1048, 1084 (C.D. Cal. 2012), *aff'd in relevant part*, 815 F.3d 593 (9th Cir. 2016).

is likewise not a cognizable defense in a false advertising case, because "counsel cannot sanction something that the defendant should have known was wrong."[25]

Furthermore, patient testimonials and unsupported statements from one podiatrist do not provide adequate substantiation for the efficacy claims that permeate SCIA's sample marketing materials.[26] Moreover, Detelich admits that he knew, as early as August 2016, that there was *no clinical evidence whatsoever* showing that the stem cell therapy treatments that SCIA helped its clients advertise to consumers were effective in treating any orthopedic condition.[27] Detelich also admits that this lack of clinical evidence made him decide to sponsor a clinical study examining the effectiveness of treatments involving the stem cell products that SCIA recommended[28] with the hope "that we could advertise our success rate

[25] *Com. Planet*, 878 F. Supp. 2d at 1084. *See also Orkin*, 849 F.2d at 1368 (holding that company's purported good faith reliance on advice of counsel is not a defense under Section 5 of the FTC Act).
[26] *See* Ex. 148, ¶ 16 ("[P]atient testimonials are a notoriously unreliable way of assessing the effectiveness of therapies because . . . regenerative medicine therapies are known to have strong placebo effects."); *FTC v. QT, Inc.*, 512 F.3d 858, 862 (7th Cir. 2008) ("[T]estimonials . . . are not a form of proof because most testimonials represent a logical fallacy: *post hoc ergo propter hoc* . . . That's why the 'testimonial' of someone who keeps elephants off the streets of a large city by snapping his fingers is the basis of a joke rather than proof of cause and effect.").
[27] *See* Detelich's Responses to Pls.' SMF Nos. 292–98, 301–302.
[28] *See* Detelich's Response to Pls.' SMF No. 299.

legally."[29] Thus, any conclusory claim that he acted in "good faith" is directly contradicted by his own testimony.

### 2. Detelich Is Individually Liable for the Deceptive Practices of All Corporate Defendants—Including PBS and SHC

Detelich also invites the Court, in a similarly oblique fashion, to infer that he cannot be held individually liable for the deceptive practices of Defendants PBS and SHC, as both companies were, if Detelich is to be believed, entirely run by Defendant Peyroux.[30] This half-baked attempt to limit the scope of Detelich's individual liability is no more convincing than his equally undercooked "good faith" and "reliance on counsel" defenses.

First, Detelich's attempt to limit the scope of his individual liability falters because the Corporate Defendants operated as a common enterprise, and Detelich served as an officer of one entity of the common enterprise. "Individuals who served as officers of some entities within [a] common enterprise are deemed to have authority to control the entire enterprise."[31] Detelich does not dispute that he

[29] Ex. 053; *see also* Ex. 007, Detelich Dep. 267:20–268:4 (discussing Ex. 053 and agreeing that SCIA study was undertaken so that "we could at least have some outcomes that we could, yeah, market, that we could tell people about").
[30] *See* Detelich Opp'n Br. 6–7.
[31] *FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1284 (S.D. Fla. 2019) (citation omitted). *See also Roca Labs*, 345 F. Supp. 3d at 1399 (holding that common enterprise inquiry is conceptually prior to determination of scope of individual liability); *NPB Advert.*, 218 F. Supp. 3d at 1362 (same).

was an officer of SCIA and had authority to control it at least up until January 2018.[32] And Detelich makes little effort to dispute Plaintiffs' factual statements establishing that the Corporate Defendants formed a common enterprise under the test adopted by the Eleventh Circuit.[33] Consequently, the exact details of Detelich's role in PBS and SHC do not affect his individual liability.

Second, Plaintiffs have presented an abundance of evidence establishing Detelich's direct participation in both PBS's and SHC's deceptive practices. With respect to PBS, Detelich does not dispute, *inter alia*, that he (a) made presentations on stem cell therapy and regenerative medicine topics to PBS clients at various PBS conferences and training sessions,[34] (b) trained PBS clients on how to communicate with potential stem cell patients,[35] (c) provided advice on advertising for stem cell therapy and regenerative medicine to a PBS client as recently as

---

[32] *See* Detelich's Resp. to Pls.' SMF Nos. 249–252, 255–257.
[33] *On Point*, 17 F.4th at 1081–82. *See* Pls.' Reply to Detelich's Responses to Pls.' SMF Nos. 9–132. Except in his response to SMF Nos. 57, 95, 106, and 108, Detelich cites no evidence whatsoever to rebut Plaintiffs' Statements of Fact pertaining to the Corporate Defendants' common enterprise. The additional statements of fact submitted by Detelich (Docket No. 112-2), and the evidence cited therein, do not create a genuine issue of material fact on any of the common enterprise factors under *On Point*. *See* Pls.' Response to Docket No. 112-2, to be filed concurrently with this Reply.
[34] Detelich's Resp. to Pls.' SMF No. 307.
[35] Detelich's Resp. to Pls.' SMF No. 308.

January 21, 2022, via email,[36] and (d) co-hosted a 2021 PBS video series on "New Standards and Regulatory Issues for Regenerative Medicine Clinics."[37] Detelich also does not dispute that both Peyroux and PBS employees understood Detelich and Peyroux to be partners in PBS.[38]

With respect to SHC, Detelich generally does not dispute the voluminous evidence of his direct participation in SHC's deceptive stem cell advertising, but claims that in each instance, he "provided these materials" to SHC "through his work with SCIA," because "SHC was a client of SCIA."[39] Even if this were true, which is not borne out by the record,[40] it is irrelevant, because direct participation does not require being a corporate employee.[41]

## IV. INJUNCTIVE RELIEF IS WARRANTED

Detelich, relying on nothing more than the self-serving assertions that he has ceased the deceptive practices at issue and does not intend to engage in the challenged conduct in the future, contends that "[t]here are no facts to support the

---

[36] Detelich's Resp. to Pls.' SMF No. 310.
[37] Detelich's Resp. to Pls.' SMF No. 311.
[38] Detelich's Resp. to Pls.' SMF Nos. 312–13.
[39] *See* Detelich's Resp. to Pls.' SMF Nos. 315–20, 322–23, 325.
[40] Detelich's self-serving statements notwithstanding, the record contains ample evidence of his involvement with SHC that cannot be explained as part of an alleged client relationship with SCIA. *See* SMF Reply Nos. 315–23.
[41] *See, e.g.*, *Nat'l Urological Grp.*, 645 F. Supp. 2d at 1207–08 (holding physician endorser liable for personally made deceptive statements).

conclusion that he has is [sic] likely to commit violations in the future," and that therefore injunctive relief is either not warranted at all, or if the Court finds that "some type of injunctive relief could be appropriate, there are factual issues regarding the scope and any duration of such injunctive relief."[42] These contentions lack merit.

**A. There Is a Cognizable Danger of Recurrent Violations**

Where there is "some cognizable danger of recurrent violation," a permanent injunction is appropriate.[43] To determine whether there is a "cognizable danger of recurrent violations," courts consider:

> the egregiousness of the defendant's actions; the isolated or recurrent nature of the actions; the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the defendant's recognition of the wrongful nature of his conduct; and the likelihood that the defendant's occupation will present opportunities for future violations.[44]

Each of these factors is supported by undisputed facts in the record. The egregiousness of Detelich's conduct is evident: He made unsubstantiated health claims[45] that often targeted elderly and disabled consumers,[46] promoted stem cell

[42] Detelich Opp'n Br., 12.
[43] *Fleetcor*, 620 F. Supp. 3d at 1344 (citations omitted).
[44] *Id*.
[45] *See* SMF Nos. 359–62, 380–81, 384, 387–89.
[46] *See* SMF Nos. 423–24, 426–31; Ex. 067; Ex. 366; Ex. 598; Ex. 557; Ex. 115; Ex. 540; Ex. 071.

therapy as an alternative to FDA-approved treatments that could have actually produced relief,[47] and falsely touted PBS's program as "FTC-approved" even after becoming aware that FTC was pursuing this lawsuit.[48] Detelich's conduct is undeniably recurrent: His promotion of unsubstantiated regenerative medicine treatment persisted over many years, and through three different companies. As discussed in detail in Section III.B above, Detelich was fully aware, as early as 2016, that there was no clinical evidence that the stem cell therapies promoted by SCIA were effective in treating any orthopedic condition.[49] Given the longevity and egregiousness of Detelich's conduct, any self-serving assurances that Detelich has "no intention of engaging in the marketing of these products or therapies in the future" ring insincere.

Nor does any such assurance address other businesses Detelich conducts or will conduct in the healthcare industry. Detelich maintains several health-related

[47] *See* SMF Nos. 389, 514, 516; Ex. 061; Ex. 073; Ex. 074.
[48] *See* SMF Nos. 231, 310, 619, 628, 631; Ex. 140; Ex. 429; Ex. 377.
[49] *See* SMF Nos. 292–298 (stating that Defendant commissioned a literature review in 2016 that concluded that "there are no studies on the safety or side effects of [the types of treatments on which SCIA counseled its clients]."); *see also* SMF Nos. 301–302.

businesses that are still ongoing,[50] including programs in wound care,[51] neuropathy,[52] and weight loss,[53] offering ample opportunities for future violations. The proliferation of Detelich's businesses in the healthcare sector, even beyond regenerative medicine,[54] point to the need for fencing-in provisions to prevent Detelich from making false or unsubstantiated health claims in the future.

### B. Injunctive Relief is Warranted Regardless of Whether Detelich Voluntarily Ceased Unlawful Activity

Detelich offers no evidence against the danger of recurring violations beyond his word of honor. It is well established that where a defendant voluntarily stops unlawful activity, injunctive relief is still warranted.[55] Permanent injunctions

[50] *See* SMF No. 231 (stating that Defendant advised clients on advertising stem cell therapy and regenerative medicine in January 2022); SMF Nos. 218–222, 619–620, 627, 628, 631 (stating business activities in which Defendant was still involved in May and August 2021, after learning of the FTC lawsuit); Ex. 018, Benson Dep. 213:25–215:2; Ex. 055; Ex. 125; Ex. 142; Ex. 352; Ex. 353; Ex. 377; Ex. 429.
[51] *See* SMF Nos. 218–222, 620.
[52] See SMF Nos. 339–340, 626.
[53] See SMF No. 626.
[54] In fact, Defendants at one point even went beyond touting regenerative medicine treatments for orthopedic conditions, the focus of the Complaint, to promoting stem cell therapy for diseases like Parkinson's, multiple sclerosis, cerebral palsy, ALS, lupus, and fibromyalgia. *See* Ex. 050.
[55] *See Nat.'l Urological Grp.*, 645 F. Supp. 2d at 1209; *FTC v. Citigroup Inc.*, 239 F. Supp. 2d 1302, 1306 (N.D. Ga. 2001) ("The fact that illegal conduct has ceased does not foreclose injunctive relief.") (citation omitted); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A defendant cannot, however, automatically moot a case simply by ending its unlawful conduct once sued.").

are appropriate where a District Court finds that the evidence shows "a reasonable likelihood of future violations," even in cases where a defendant voluntarily ceased deceptive practices.[56] This is particularly true when a defendant, despite having ceased one specific business endeavor, maintains current practices that "could serve as a platform for future violations of the FTC Act."[57]

Finally, the nature and scope of the injunctive relief proposed by Plaintiffs is warranted. Established case law shows that "injunctive relief may 'extend beyond the specific violations at issue' to prevent a defendant from engaging in related deceptive or unfair practices in the future."[58] The injunction proposed by Plaintiffs, including banning Detelich from advertising, marketing, or selling regenerative medicine treatments, as well as fencing-in relief requiring competent and reliable scientific evidence for all health-related claims, is appropriate for addressing the wide-ranging and shape-shifting nature of Defendants' hydra of unscrupulous business.

---

[56] *See USA Fin., LLC*, 415 F. App'x at 975.
[57] *Nat.'l Urological Grp.*, 645 F. Supp. 2d at 1209–10.
[58] *See Fleetcor*, 620 F. Supp. 3d at 1312 (quoting *RCA Credit Servs.*, 727 F. Supp. 2d at 1335); *see also FTC v. Windward Mktg*., No. 1:96–cv–615F, 1997 WL 33642380, at *15 (N.D. Ga., Sept. 30, 1997) ("It is well settled that those caught violating the FTC Act can expect some 'fencing in' . . . . to prevent similar and related violations from occurring in the future.").

## V. MONETARY RELIEF UNDER THE FBPA IS WARRANTED

### A. Materiality Is Presumed and Defendants Violated Section 393(a) Each Time They Disseminated Claims About Stem Cell Therapy

Detelich contends that this Court cannot make any determinations about civil penalties because there are issues of fact about the materiality of Defendants' claims.[59] But the claims are presumed to be "material" because the claims are express, health-related claims.[60] Every time Defendants disseminated the claims, no less than once a day for 1,330 days, the FBPA was violated.

### B. The Legislature Directed that the Attorney General Should Enforce the FBPA in a Court with Equitable Powers

Detelich argues that a federal court exercising its pendant jurisdiction cannot award civil penalties to the State because O.G.C.A. § 10-1-397 "unequivocally states it is the superior court that is to make the determination as to numbers of violations and what if any civil penalty should be assessed."[61] Detelich's interpretation fails because it reads Section 397 in a vacuum and does not consider other related statutes within the FBPA. This violates the rule of construction that statutes that relate to the same subject matter should be construed together.[62]

---

[59] Detelich Opp'n Br. 14.
[60] S*upra* Section III.A and nn.12–13.
[61] Detelich Opp'n Br. 15.
[62] *Snyder v. State,* 657 S.E.2d 834, 837 (Ga. 2008).

The FBPA was amended in 1988 to add Section 397 authorizing the Administrator of the FBPA to enforce the FBPA and seek equitable remedies in a superior court.[63] Thus, the legislature authorized enforcement action to be taken in the type of Georgia state court that has exclusive jurisdiction over equitable matters, a "superior court."[64] When the Georgia legislature transferred enforcement authority to the Attorney General in 2015,[65] the legislature authorized the Attorney General to also enforce the FBPA in a federal district court.[66] Detelich's construction of the FBPA, which limits the Attorney General's authority to enforcing the FBPA in superior court, impermissibly renders Section 397.1 meaningless.[67] Because the Section 397.1 authority to initiate an action in federal court supplements, and does not conflict with, the enforcement authority in Section 397, the Attorney General has authority to enforce the FBPA in this Court and this Court has the authority and the power to construe and implement the provisions of

---

[63] *See* 1988 Ga. Laws 1659, 1660–61, § 1.
[64] *See* O.C.G.A. § 23-1-1 ("All equity jurisdiction shall be vested in the superior courts of the several counties").
[65] *See* 2015 Ga. Laws 1088, § 2.
[66] *See* O.C.G.A. § 10-1-397.1 (authorizing the Attorney General to "initiate or intervene as a matter of right or otherwise appear in any federal court . . . to implement the provisions" of the FBPA).
[67] *See Grimes v. Catoosa Cty. Sheriff's Off.*, 705 S.E.2d 670, 673 (2010) ("All parts of a statute should be harmonized and given sensible and intelligent effect, because it is not presumed that the legislature intended to enact meaningless language.").

Section 397.

### C. "Targeting" and Proof of Consumer Reliance are not Required to Impose Penalties Under Section 851

Relying on O.C.G.A. § 10-1-393.5(d), Detelich contends that the State must prove that Detelich intentionally targeted elder or disabled persons before civil penalties may be imposed under Section 851.[68] However, the State's request for penalties is not based on Section 10-1-393.5(d), but is instead based on violations of Sections 393(a) and 393.5(b) that were committed against elderly and disabled consumers. Section 851 provides for additional civil penalties of up to $10,000 for each FBPA violation against "elder or disabled persons."[69] While evidence of "targeting" is required to prove a violation of Section 393.5(d), it is not required for the imposition of penalties under Section 851 for violations of Sections 393(a) or 393.5(b).[70]

In any event, the undisputed evidence shows that Defendants did "target" or intentionally employ marketing techniques and content geared toward both elderly

---

[68] Detelich Opp'n Br. 17.
[69] O.C.G.A. § 10-1-851.
[70] *See Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) ("[I]ndividuals who violate the FBPA are subject to additional civil penalties if the violation is committed against elder or disabled persons. § 10-1-851"); *Strange v. GMR Processing LLC*, No. 1:21-cv-04469-SDG, 2023 WL 2752188, at *2 (N.D. Ga. Apr. 3, 2023) (imposing a penalty when the defendant did not know the plaintiff was disabled).

and disabled consumers. SHC's "target demographic for stem cells [wa]s more in the older age range," and it would use social media to "'target' the advertisement towards the age demographic."[71] SHC's marketing materials often mentioned patients who were experiencing limitations on their major life activities, so Detelich's alternative inference concedes that Defendants also targeted consumers with disabilities.[72]

Moreover, despite Detelich's arguments otherwise,[73] the State is not required to prove a correlation between the number of consumer purchases and online

---

[71] SMF No. 423; Ex. 067 at 24; *see also* Ex. 557 ("I'm looking forward to meeting you in a few days to share many of the great stories of patients (many whom are well into their 70's & 80's) who have received this treatment and been able to return to the 'playing field' of travel, quality family time, and even just simple daily routines like cooking & cleaning."); Ex. 366 (instructing that SHC stem cell lectures should not be scheduled on election day because that day "is very big and that is all old people have left in life to do."); SMF No. 428 (citing marketing emails with purported testimonials of elderly consumers).

[72] Detelich Opp'n Br. 18. The FBPA defines "disabled person" as "a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities." O.C.G.A. § 10-1-850. SMF Reply No. 402; Ex. 590, Reid Dep. 23:11–15 ("[W]e can help get you out of your wheelchair. We can help you get rid of your walker."); SMF Reply No. 530; Ex. 604 at 40 (describing a degenerative disk disease that prevented a stem cell patient from engaging in major life activities); SMF Reply No. 540; Ex. 398 at E.9-37–38 ("When I came in here, I was in a lot of pain, not sleeping at night. I couldn't turn my head without hearing the bones grinding. . . So, I came and I got the treatment."); Ex. 080 at 52 ("Before I tried the amniotic tissue injection, I was having trouble just walking even five minutes.").

[73] Detelich Opp'n Br. 17–18.

campaigns, brochure downloads, or seminars. Reliance is presumed when a defendant makes widely disseminated material misrepresentations, and consumers make purchases.[74] The undisputed evidence regarding the methods used to disseminate deceptive claims and number of elderly consumer purchases is sufficient for this Court to determine Section 851 penalties.

**D. The State is Entitled to Restitution**

The FBPA expressly provides for restitution.[75] Detelich contends that the State's reliance on *Quattrocchi v. State* is misplaced and that because the State has not shown how may consumer purchases were the result of Defendants' ads, he cannot be held liable for restitution.[76] Contrary to Detelich's contention, *Quattrocchi* was decided in the context of a State action to enforce the FBPA.[77]

Detelich's argument that there are factual issues pertaining to the calculation of restitution fails because the State is not required to show a nexus between the

---

[74] *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000) ("proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief needed to redress fraud") (citing *FTC v. Figgie Int'l.*, 994 F.2d 595, 605 (9th Cir. 1992)); *FTC v. BlueHippo Funding*, 762 F.3d 238, 243 (2nd Cir. 2014) ("[t]he injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions.") (citing *Figgie Int'l*).

[75] O.C.G.A. § 10-1-397(b)(2)(D).

[76] Detelich Opp'n Br. 19–20

[77] *Quattrocchi v. State*, 850 S.E.2d 432, 434–35 (Ga. Ct. App. 2020).

ads and statements Defendants made and the consumers who made purchases because reliance is presumed.[78] Detelich neither disputes the number of consumers who purchased stem cell therapy nor the total gross amount paid by these consumers. Accordingly, there is no issue of fact for this Court to decide in considering the State's request for restitution upon a finding that Detelich violated the FBPA.

### E. This Court Should Continue to Exercise Supplemental Jurisdiction Over the State's Claims

Relying on 29 U.S.C. § 1367(c), Detelich argues that this Court should decline to exercise jurisdiction over the State's claims for remedies at this time because the claims raise novel issues of state law and the State's remedy claims "predominate this case."[79] But federal law grants this Court jurisdiction over the state law issues in this case. Specifically, 28 U.S.C. § 1367(a) provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[80] The doctrine of supplemental jurisdiction permits federal courts to decide state law claims involved in cases raising federal

---

[78] *Supra* n. 74.
[79] Detelich Opp'n Br. 21–22.
[80] *See also Parker v. Scrap Metal Processors*, 468 F.3d 733, 742–43 (11th Cir. 2006).

questions when doing so would promote judicial economy and procedural convenience.[81] A federal district court may decline supplemental jurisdiction if the claim raises a novel or complex issue of State law, or the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.[82] A federal court will find substantial predominance as a basis for declining supplemental jurisdiction when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage."[83]

Here, Plaintiffs' claims of liability and request for injunctive relief mirror each other, involve the same operative facts, and require application of the same legal standards. The Court's consideration of the State's request for additional equitable remedies requires just one additional step after determining liability, a determination of the amount of civil penalties and restitution to be imposed based on the relevant and undisputed facts. Judicial economy and procedural convenience favor resolving the State's claims for monetary remedies in this Court.

Detelich contends that application of Section 397 involves "novel" issues of law merely because the FBPA does not specify a method for calculating the

---

[81] *Sutherland v. Glob. Equip. Co.,* 789 F. App'x 156, 161 (11th Cir. 2019) (citing *Ameritox, Ltd. v. Millennium Laboratories, Inc.,* 805 F.3d 518, 530 (11th Cir. 2015)).
[82] 28 U.S.C. § 1367(c)(1), (c)(2).
[83] *Parker*, 468 F.3d at 744 (citations omitted).

number of violations or set out specific factors for determining the size of the per-violation penalty.[84] Detelich mistakenly equates the Georgia legislature's allowance for judicial discretion with a novel issue of law. Detelich has not provided any authority or pointed to any conflict in Georgia law to support his position.[85] Additionally, Detelich's single explanation as to why the State's 397 remedy claims "predominate this case"—that the State is seeking millions of dollars in civil penalties—is unavailing.[86] The undisputed facts establish violations of the FTC Act and FBPA and support the request for remedies. Once liability has been determined and all that remains is a determination of state law monetary remedies, the state law claims do not substantially predominate over the federal claims.[87] Detelich also fails to demonstrate a basis for this Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(2).

### F. This Court Need Not, and Should Not, Certify Any Questions to

[84] Detelich Opp'n Br. 13–14, 17, 21–22.
[85] *See Parker*, 468 F.3d at 744 (finding that the district court erred when it declined to exercise supplemental jurisdiction because defendant did not cite any authority holding that Georgia state law claims had been considered novel or complex by a federal court, or any authority holding that a trial on damages alone, after liability had been determined, raises novel or complex issues of state law).
[86] Detelich Opp'n Br. 22.
[87] *See Parker*, 468 F.3d at 744 ("because liability has already been determined with regard to all claims, we conclude that the new trial on state law damages does not substantially predominate over the federal claims") (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414, 428–29 (11th Cir. 1984)).

**the Georgia Supreme Court**

Detelich contends that this Court should certify three questions regarding O.C.G.A. § 10-1-397(b)(2) to the Supreme Court of Georgia including how the number of violations are to be calculated, what factors are to be considered in deciding civil penalties, and how restitution is to be determined.[88] As explained in Plaintiffs' Reply to Peyroux's Opposition Brief, this Court *may* certify questions or propositions of the laws of Georgia to the Georgia Supreme Court when there is law involved in a case which is determinative of the case and there are no controlling precedents in the Georgia appellate court decisions but that decision is discretionary and should never be automatic.[89]

Detelich contends that certification is appropriate here because there is "substantial" or "significant" doubt regarding the status of state law, yet he does

[88] Detelich Opp'n Br. 24.

[89] Plaintiffs' Reply Br. 22–24 (Docket No. 115); *see* Ga. Sup. Ct. Rule 46; *Harden v. State Farm Mut. Auto Ins.*, 339 F. App'x 897, 901 (11th Cir. 2009) ("[the] decision to certify a question is discretionary."). But "certification should never be automatic or unthinking." *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998). This Court may decide a question of state law even if there is doubt as to how a state would resolve the issue, and Defendant does not have the right to insist upon certification. *Id.* This Court may certify questions to the Georgia Supreme Court if there is "more than substantial doubt as to how the issue [is to] be resolved." *Rest. Grp. Mgmt. v. Zurich Am. Ins.*, No. 21-12107, 2022 WL 1931094, at *2 n.3 (11th Cir. 2022) (citing *Toomey v. Wachovia Ins. Servs.*, 450 F.3d 1225, 1231 (11th Cir. 2006)).

not point to any authority signifying what "doubt" exists, nor does he point to any authority signifying why the "doubt" is "substantial" or "significant." As explained in Plaintiffs' Reply to Peyroux's Opposition Brief, the plain language of the FBPA sections at issue, related Georgia appellate decisions, and the express intent of the Georgia legislature to liberally construe and apply the FBPA to promote its underlying purposes and policies guide this Court.[90] As a result of these authorities, there is not "substantial doubt" for this Court about how to determine whether Defendants' conduct violates the FBPA, to quantify the number of violations in order to determine maximum potential civil penalties, and to determine the amount Defendants should pay as restitution. Accordingly, this Court can and should proceed without the aid of the Georgia Supreme Court.

## VI. CONCLUSION

Plaintiffs request that the Court grant summary judgment in their favor and enter the proposed order (Docket No. 73-3).

[90] Plaintiffs' Reply Br. 6–9 (Docket No. 115) (citing, *inter alia, In re Arby's Rest. Group Litig.*, No. 1:17-cv-0514-AT, 2018 WL 2128441, at *18 (N.D. Ga. Mar. 5, 2018) ("the Georgia legislature intended the [FBPA] to 'be liberally construed and applied to promote its underlying purposes and policies'.")).

Dated: June 2, 2023

Respectfully submitted,

/s/ Elizabeth Nach
ELIZABETH NACH (Va. Bar No. 75235)
STACY N. CAMMARANO (D.C. Bar No. 1510736)
ROBERT VAN SOMEREN GREVE (D.C. Bar No. 1617234)
CASSANDRA RASMUSSEN (D.C. Bar 1617603)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.: (202) 326-2611 (Nach)
(202) 326-3308 (Cammarano)
(202) 326-2523 (Van Someren Greve)
(202) 684-0175 (Rasmussen)
Email:enach@ftc.gov
scammarano@ftc.gov
rvansomerengreve@ftc.gov
crasmussen@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Jacquelyn L. Kneidel
JACQUELYN L. KNEIDEL
Ga. Bar No. 644727
Office of the Attorney General Chris Carr
Georgia Department of Law
2 Martin Luther King, Jr. Drive, SE, Suite 356
Atlanta, GA 30334
Tel: (404) 458-3871
Email: jkneidel@law.ga.gov

*Attorney for Plaintiff State of Georgia*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, I caused service of *Plaintiffs' Reply in Support of Their Joint Motion for Summary Judgment* to be made by electronic filing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Date: June 2, 2023

/s/ Elizabeth Nach
Elizabeth Nach

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rule 7.1(D), that this document complies with Local Rule 5.1(C), as it was prepared using a 14-point Times New Roman font.

Date: June 2, 2023

/s/ Elizabeth Nach
Elizabeth Nach